UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION


NANCY MCCART,                        :
                                     :   NO. 1:08-CV-656
        Plaintiff,                   :
                                     :   **OPINION & ORDER**
                                     :
   v.                                :
                                     :
                                     :
UNIVERSITY OF CINCINNATI             :
FOUNDATION,                          :
                                     :
        Defendant.


    This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 28), Plaintiff's Memorandum in Opposition thereto (doc. 32), and Defendant's Reply Brief in Support thereof (doc. 35). For the following reasons, the Court DENIES Defendant's Motion.

**I.  BACKGROUND**

    The following facts are taken from Plaintiff's Amended Complaint (doc. 16), Defendant's Motion for Summary Judgment (doc. 28), and Plaintiff's Opposition thereto (doc. 32).

    Plaintiff was hired in 2005 by the University of Cincinnati Foundation ("Defendant" or the "Foundation") as the Director of Development for University of Cincinnati-Clermont College (doc. 16). The Foundation is a legal entity distinct from the University of Cincinnati, and its function is to raise money for the University (doc. 28). Plaintiff's initial position with the Foundation was focused on identifying prospective donors in the Clermont College community and soliciting donations from them, and

her office was located on the Clermont College campus (Id.).  In that position, she reported directly to the Associate Vice President (doc. 32).  The Dean of Clermont College engaged in behavior that created an intolerable work environment for Plaintiff, including using objectionable language, leering at Plaintiff, inappropriately touching a female staff member, and making comments that he liked to "chase young women" (Id.).  Plaintiff complained of this behavior both to the Dean himself, who moved Plaintiff's office to a storage closet in response, and to her direct supervisor, Mr. Arkeilpane (Id.).

After seeing no improvement, Plaintiff desired to bring a formal complaint against the Dean, and in February 2006 she met with Mr. Mulvihill (Mr. Arkeilpane's replacement and Plaintiff's new supervisor), the University's provost and the University's vice provost to discuss her complaints (Id.).  Plaintiff put her complaints in writing, expressed concern about retaliation, and stated that she was not willing to return to work at the Clermont College location (Id.).  She was transferred to an office at the Foundation's central offices, where she was assigned project work (Id.).  The University conducted an investigation into her allegations against the Dean, issued a letter of reprimand against him, and did not renew his contract (Id.).  The non-renewal of his contract meant that he continued to work as Dean of the Clermont College for another eighteen months (Id.).

In May 2006, Plaintiff was hired into a position

Mulvihill had recently created, Development Director for the Cincinnati Area (Id.). This position did not report directly to Mulvihill but, instead, reported to Mr. Isch, who supervised four or five regional development officers, and who in turn reported to Mulvihill (Id.). In this new position, Plaintiff had duties similar to the other regional development officers but did not have to travel (Id.). Plaintiff was satisfied with this new position, and she exceeded all of Isch's goals and expectations (Id.).

Also in May 2006, Mulvihill created a task force to evaluate the Foundation's resources and goals and to make recommendations regarding best practices (Id.). One of the recommendations in the task force's final report, issued in October 2006, was that using college officers to develop prospective donors in the greater Cincinnati area would be a more efficient use of resources (Id.). In August or September 2006, Mulvihill informed Isch that he was eliminating Plaintiff's position of Development Director for the Cincinnati Area, and Isch informed Plaintiff of the same (Id.).

At around this same time, Mulvihill created a new position, that of Campaign Events Director, and Isch recommended Plaintiff for the position (Id.). Plaintiff expressed her concerns that the position was a demotion and not within her area of interest or expertise (Id.). After reflecting on the offer, Plaintiff sent an email to Mulvihill and Isch saying, among other things, that she was excited about what she could deliver in the

position but that, as currently structured it would be a "disastrous career move" for her (doc. 28). In the email, she offered several thoughts about restructuring the position, including having the position report directly to Mulvihill and dedicating secretarial support to the position, and she requested several perks, including an increase in salary, an extra two weeks of vacation, a flexible work schedule and a dedicated parking spot (Id.). Mulvihill informed Plaintiff that her requests were not acceptable (Id.).

Mulvihill also looked to see whether other open positions at the Foundation would be options for Plaintiff; two development director positions were open, but Mulvihill decided that, while Plaintiff met the minimal qualifications for these positions, he felt the Foundation would benefit from more experienced candidates and therefore decided that Plaintiff was not a good fit for those positions (Id.). Plaintiff did not apply for either of those positions or for any other position within the Foundation (Id.). On October 25, 2006, Mulvihill and Isch met with Plaintiff and informed her that because her position was being eliminated, she had not accepted the Campaign Events Director position, and no other job at the Foundation was a good fit, her employment with the Foundation was terminated effective as of November 1, 2006 (Id.).

After exhausting her administrative remedies, Plaintiff filed the instant action alleging that her employment was terminated in retaliation for making the charge of harassment

-4-

against the Clermont College Dean, in violation of Title VII and Ohio Revised Code 4112.02 (doc. 16).

**II. SUMMARY JUDGMENT**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on

which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of his claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**III.     Title VII Retaliation**

In addition to prohibiting employment discrimination on the basis of sex, race, color, religion or national origin, Title VII makes it unlawful for an employer to retaliate against an employee because the employee either opposed any practice that Title VII made unlawful or filed a charge under Title VII. 42 U.S.C. § 2000e-3(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006). In the absence of direct evidence, and none is presented here, the Court reviews Plaintiff's retaliation claim under the McDonnell Douglas framework. Weigel v. Baptist Hosp., 302 F.3d 367, 381 (6th Cir. 2002). To establish her prima facie case of retaliation, Plaintiff must show that: 1) she engaged in activity protected by Title VII; 2) the Foundation knew that she exercised such rights; 3) the Foundation took retaliatory action that a reasonable employee would have found materially adverse; and 4) there was a causal connection between the protected activity and the adverse action. Arendale v. City of Memphis, 519 F.3d 587, 606 (6th Cir. 2008); Burlington Northern, 548 U.S. 53, 68. If

Plaintiff is successful in demonstrating her prima facie case, the burden shifts to the Foundation to produce evidence of a legitimate, nondiscriminatory reason for its actions. EEOC v. Avery Dennison Corp., 104 F.3d 858, 862 (6th Cir. 1997). If the Foundation satisfies this burden, Plaintiff must then demonstrate that the legitimate reason offered by the Foundation was a pretext designed to mask retaliation. Id. at 862.

### A. Plaintiff's Prima Facie Case

Here, the parties contest only the last two prongs of the prima facie case, with Defendant asserting that Plaintiff has failed to show both that she suffered an adverse employment action and that there was a causal connection between reporting the Dean's inappropriate behavior and the termination of her employment at the Foundation (doc. 28).

### 1. Adverse Employment Action

To establish an adverse employment action in a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68. Plaintiff claims that the elimination of her position and the transfer to the Campaign Events Director position, as the position was presented to her, was an adverse employment action (doc. 32). Defendant, on the other hand, claims that Plaintiff has presented no objective

evidence that the transfer constituted an adverse action and, instead, bases her assertions purely on her subjective feelings (doc. 35).  Defendant notes that there is no dispute that the Campaign Events position offered the same pay and benefits as the position being eliminated, and that it, like the eliminated position, was a "Director" position (Id.).  As such, Defendant argues that Plaintiff's contention that the transfer to the Campaign Events position constituted an adverse employment action fails as a matter of law because the determination of whether an employment action is materially adverse is an objective standard (Id., citing Burlington Northern, 548 U.S. at 68).

The Court finds that the termination of Plaintiff's employment unless she accepted the transfer to the position of Campaign Events Director, under the circumstances present in this case, could dissuade a reasonable employee from making a charge of discrimination.  In the span of nine months, Plaintiff complained of inappropriate behavior by the Dean of Clermont College; Plaintiff, not the Dean, was removed from the situation; Plaintiff's job changed; she was hired for a new position; and that new position was eliminated.  To cap off these months of tumult, Plaintiff was offered the Campaign Events Director job.  While it appears from the record that her pay and benefits would not have diminished with the Campaign Events job, Defendant's assertion, that this necessarily means that it is only Plaintiff's subjective impression that the position represented an adverse move, is an

assertion the Court finds unpersuasive. Plaintiff was hired by the Foundation at the Director level. Prior to that, she held a position with the Episcopal Retirement Homes where she reported directly to the CEO and managed a team of four development professionals (doc. 32). Before that, Plaintiff held a Director position at Xavier University (Id.). Therefore, the record indicates that for over ten years Plaintiff had held Director-level positions with significant responsibility reflected both in the job tasks and the reporting structures.

Had Plaintiff accepted the Campaign Events position, she would have reported directly to someone who had, until the creation of that position, been an associate director and who was being promoted in order to increase her supervisory duties (doc. 28). That woman, in turn, reported to another director, who reported to Isch, who reported to Mulvihill (doc. 32). This would have meant that, within nine months of complaining about inappropriate behavior in the workplace Plaintiff would have fallen three layers in the organizational hierarchy and would have found herself reporting to a neophyte director. A reasonable employee in Plaintiff's position could certainly see such action as materially adverse.

In addition, included as examples of the _primary_ responsibility of the Campaign Events position were preparing mailings, name tags and photo lists (doc. 28). In contrast, the primary responsibility of Plaintiff's previous positions was

raising hundreds of thousands of dollars (Id.). It is not unreasonable to see the shift from significant fundraising to clerical tasks as representing a substantial diminution in responsibility. To assert, as Defendant does, that the Campaign Events position was merely a lateral transfer is disingenuous.

Defendant's attempts to present this as a simple matter of Plaintiff subjectively not liking the position, and its assertions that the position categorically represents no objective adversity, are not well taken. The Court finds that a reasonable employee in Plaintiff's position could be dissuaded from complaining about offensive behavior when, within nine months of making a complaint, the employee is removed from her locale and her job, assigned a new job that was then dissolved within months, is offered a position with clerical responsibilities as primary job duties, which would leave her three levels lower in the organizational hierarchy than where she was prior to the complaint, and, upon suggesting changes to that position, her employment is terminated. Plaintiff has met this prong of her prima facie case. See, e.g., Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000); Burlington Northern, 548 U.S. at 68.

### 2. Causal Connection

To meet the causal connection prong of her prima facie case, Plaintiff must produce sufficient evidence to create an inference that the "adverse action would not have been taken had the plaintiff not filed a discriminatory action." Nguyen, 229 F.3d

at 563.

Here, Plaintiff argues that she has proved the causal connection because her employment was terminated within nine months of having made the complaint about the Dean; no other positions were eliminated as part of the Foundation's supposed reorganization; and Mulvihill told her that he believed that the Foundation would be absolved of liability to her if they offered her a position (doc. 32). Defendant contends that nine months is too long to serve as "close temporal proximity" and that, even if it could be so considered, Plaintiff has not produced additional evidence of retaliatory motivation or conduct (doc. 35). Specifically, Defendant asserts that Plaintiff's claim fails because she has not presented evidence that Mulvihill had any reason or motivation for retaliating against Plaintiff because she made a complaint against the Dean, to whom Mulvihill had no connection, about whom he felt no personal allegiance and over whom he had no control (Id.).

First, Defendant misconstrues the law on this issue. Indeed, by arguing that Plaintiff's claim should fail because nine months is too long to serve as "close" temporal proximity, Defendant appears to have split the causation prong into two sub-prongs, where a plaintiff must prove both "close" temporal proximity and provide additional evidence of causation. This is not what the law requires. Instead, no one factor is dispositive in a causation inquiry. Nguyen, 229 F.3d at 563. A plaintiff must

simply produce evidence sufficient to create an inference of causation. Id. Whether the two events happened in short succession or whether a long period of time elapsed between them can be relevant to that inquiry, but it is not dispositive. Indeed, Defendant recognizes that temporal proximity, in connection with other evidence of retaliation, can suffice to prove causation (doc. 35, citing Harrison v. Metropolitan Government of Nashville, 80 F.3d 1107 (6th Cir. 1996)). However, Defendant then goes on to assert that Plaintiff's nine months puts her outside the "close temporal proximity" zone. In making this assertion, Defendant ignores the fact that in Harrison, the very case cited by Defendant where causation was found, fifteen months had passed between the complaint and the termination. Harrison, 80 F.3d at 1119. Defendant's argument that Plaintiff's claim fails because nine months is somehow outside the zone of temporal proximity as a matter of law is not at all well taken.

Second, Defendant similarly appears to have created a requirement that Plaintiff produce a reason for Mulvihill to want to protect the Dean or punish Plaintiff out of a sense of personal loyalty to the Dean. Repeatedly, Defendant makes much of the facts that Mulvilhill had no friendship or social relationship with the Dean and that no one else at the Foundation had a special connection with the Dean. Defendant contends that this somehow negates any attempts Plaintiff has made to show retaliatory motivation (docs. 28, 35). The Court views this as nothing more

than a red herring. Certainly, if Plaintiff had produced evidence that Mulvihill eliminated Plaintiff's position because he was personally connected to the Dean and was acting out of loyalty to that connection, the Court would find that evidence relevant. However, Plaintiff is in no way required to produce such evidence and the fact that it is not present is <u>not</u> relevant to the Court's analysis. For example, Mulvihill may have eliminated Plaintiff's position and may have put her through those nine months of job upheaval because he simply did not want someone who would rock the boat on his staff. His lack of personal connection to the Dean would, of course, have no bearing on that motivation.

Third, the burden of establishing a <u>prima</u> <u>facie</u> case of retaliation is not an onerous one. <u>Nguyen</u>, 229 F.3d at 563. Given that, the Court finds that Plaintiff has met the causation prong. When Plaintiff made her complaint, she was removed from the situation, a move that set the rest of the events in motion. Simply put, had Plaintiff not complained of the Dean's behavior, it is reasonable to assume that she would still be fundraising for Clermont College. In addition, the Court finds that, coupled with the nine months of job turmoil Plaintiff was subjected to after making her complaint, Mulvihill's statement, that he believed that if the Foundation offered Plaintiff any position it would be absolved of liability, is evidence sufficient to allow for an inference of causation. If true, this statement shows that Mulvihill himself connected the two events–Plaintiff's complaint

and the Campaign Events position that led to Plaintiff's termination–such that, in the context present here, an inference of retaliation is reasonable.

### B. Defendant's Legitimate Nondiscriminatory Reason and Pretext

Plaintiff has succeeded in making her prima facie case, which shifts the burden to Defendant to produce a legitimate nondiscriminatory reason for the adverse action. Defendant contends that the decision to eliminate Plaintiff's position, offer her the Campaign Events position, and terminate her employment was a legitimate business decision informed by the conclusions of the task force report, Plaintiff's lack of acceptance of the Campaign Events position, and Mulvihill's decision that she was not a good fit for the two other positions open at the Foundation at the time of her termination (docs. 28, 35). Plaintiff does not contend that the Foundation has failed to produce an ostensibly legitimate reason for its actions but argues that this reason is pretext for retaliation (doc. 32).

To establish pretext, Plaintiff must show that the Foundation's stated reason had no basis in fact; did not actually motivate the challenged conduct; or was insufficient to explain the challenged conduct. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994). The Sixth Circuit has cautioned that courts should "avoid formalism" in the application of this test, "lest one lose the forest for the trees." Chen v. Dow Chem. Co., 580 F.3d 394, 400, n. 4 (6th Cir. 2009). Pretext, the court

observed, "is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." Id. At base, then, the Manzer test can be distilled to one simple requirement here: Plaintiff must produce sufficient evidence such that a reasonable jury could doubt the Foundation's stated reasons for its actions. Id. See also Forrester v. Rauland-Borg Corp., 453 F.3d 416, 417-18 (7th Cir. 2006)("If the stated reason for the challenged action did not motivate the action, then it was indeed pretextual...[and] a trier of fact...would be entitled to infer a discriminatory motive from [that] pretextual character...").

Plaintiff points to a number of facts in support of her pretext argument: the decision to eliminate her position was not based on the task force's report because the report does not actually recommend that; she did not reject the Campaign Events position when she offered her suggestions regarding the reporting structure, parking, etc., which were rejected by Mulvihill; when the Foundation did hire someone for the Campaign Events position, it incorporated nearly all of those rejected suggestions; and there were other positions open at the Foundation for which Plaintiff was qualified (doc. 32). Defendant, in reply, notes that it never claimed that the decision to eliminate Plaintiff's position came from the task force report and that, instead, it has consistently maintained that Mulvihill's decision to eliminate Plaintiff's

position was his own, but that it was informed by the report (doc. 35). In addition, Defendant argues that, to the extent there were positions open at the Foundation, Mulvihill operated under an honest belief that Plaintiff was not a good fit for those positions and notes that, in any event, Plaintiff did not apply for any other open position (Id.). Defendant does not reply to the observation that the suggestions offered by Plaintiff regarding the Campaign Events position were later adopted by the Foundation for a different candidate.

The Court finds that Plaintiff's contention that a jury could find factually false the notion that the Foundation based its decision on the task force report is not compelling. Plaintiff has produced nothing proving that the Foundation stated that the reason for eliminating her position is that the report said that it should. Instead, the record indicates only that the Foundation has consistently stated that Mulvihill made the decision, which he claims was influenced by the findings and recommendations of the task force. The absence from the report of a recommendation that her position be eliminated is not relevant to proving pretext.

However, rather than offer her a truly equivalent job–that of director of development at another college with a reporting structure commensurate to the one she enjoyed at Clermont College–Mulvihill offered her a job that was primarily clerical in nature that would have meant a three-level fall in the organizational structure. Plaintiff was hired as a director of

development and had received only positive performance feedback in that position.  What happened between the points in time when she was judged well-qualified for <u>that</u> director of development position and when she was judged not a "good fit" for <u>other</u> director of development positions?  She exercised her legal right to complain about the Dean's behavior.  After the complaint, Plaintiff was essentially deemed qualified only for what appears to be, at base, a well-paid clerical position and not qualified for positions similar to the one for which she was originally hired.  Under the circumstances present here, the Court finds this sufficient circumstantial evidence from which a jury could reasonably find that Mulvihill's decision to not hire Plaintiff for one of the other open development director positions was not actually motivated by his belief that she was not a good fit for those positions.  <u>See</u> <u>Manzer</u>, 29 F.3d at 1084.

In addition, when the Foundation did hire someone for the Campaign Events position, it incorporated nearly all of the suggestions Plaintiff made (doc. 32), suggestions the Foundation found to be so "horrif[ying]" and unreasonable that Mulvihill construed the very fact that Plaintiff made those suggestions as a rejection of the job (doc. 28).  From this fact, and the statement Mulvihill allegedly made regarding his perception that the Foundation would not be subject to liability if it offered Plaintiff some type of position, a reasonable jury could infer that Mulvihill's claim that he thought Plaintiff had rejected the

Campaign Events position was not an honest claim and that the creation of the position as it was offered to Plaintiff was not actually motivated by the business reasons the Foundation asserts. See Manzer, 29 F.3d at 1084.

In short, Plaintiff has produced evidence that casts a doubt on the Foundation's explanations, and the Court finds that evidence strong enough to preclude finding for the Foundation as a matter of law. Chen, 580 F.3d at 400, n. 4.

**IV.    CONCLUSION**

At the summary judgment stage, it is not for the Court to decide the outcome of this case as it might if the matter were before the Court to be decided on the merits. Based on what has been presented to the Court, it would not be unreasonable for a jury to decide the case in favor of Plaintiff. Consequently, summary judgment for Defendant is inappropriate. For the foregoing reasons, the Court DENIES the Foundation's Motion for Summary Judgement (doc. 28).

SO ORDERED.

Dated: April 7, 2010        s/S. Arthur Spiegel
                            S. Arthur Spiegel
                            United States Senior District Judge